**FITE. v. PAYNE, Postmaster.**
**Civ. A. No. 3995.**

United States District Court
N. D. Texas, Dallas Division.
July 18, 1950.

Cox & Cusack, Dallas Tex., for the plaintiff.

Frank B. Potter, United States District Attorney, A. W. Christian, Assistant United States District Attorney, Fort Worth, Tex., O. Morris Harrell, Assistant United States District Attorney, Dallas, Tex., Marvin C. Taylor, Special Assistant to the Attorney General of the United States, for the defendant.

ATWELL, Chief Judge.

The complainant sought a tempory and permanent restraining order against the defendant to require the defendant, as postmaster at Dallas, Texas, to continue the same mail delivery service to him as he had

received before May 24, 1950. That his business is located in the business section of Oak Cliff.

After the taking of testimony a show cause order was issued, and a hearing had upon the temporary restraint desired. That restraint was granted on the 19th day of June, 1950.

After that, the defendant appealed to the Circuit Court of Appeals for the Fifth Circuit, which denied him any revocation.

Two hundred thirty-seven other business concerns, in the same business section of Oak Cliff, sought for, and received, permission to intervene.

Upon July 17, 1950, the case went to trial.

At the conclusion of the plaintiff's testimony, the government made motions for judgment. Those motions were oral, and the court's ruling upon them was oral.

The first dealt with the alleged failure of the intervenors, and each of them, to offer proof. The testimony shows that there was a stipulation entered into by both sides, which covered testimony that had been heard upon the preliminary injunction hearing, and also related to the intervenors themselves. Several of the intervenors did, in truth, testify. There was general testimony to show that they were all business men in Oak Cliff, upon, and in, the business district, concerning which this controversy arose.

The second motion related to the alleged lack of jurisdiction because the Postmaster General is not a party. That matter was ruled in limine, and citations to support the ruling that the Postmaster General was not a necessary party. In addition to that, the testimony of the Deputy Postmaster General was, that, the matter was in the hands of Payne, the Postmaster at Dallas, and committed to him by the express language of the directorate of the Postmaster General, of April, 1950.

The third motion was, that there is no jurisdiction because it is not a matter arising out of the postal laws.

All of the cases, and there is a multitude of them, give this court jurisdiction of just such controversies. D.C., 91 F.Supp. 21. The question of the citizen's right to the delivery of his mail, may not be classified as one of the cases that has heretofore had the attention of a trial court and of the appellate courts, but it certainly arises out of the postal laws.

The scope of the testimony cannot be said, with all kindness and utter absence of criticism, to have been with the thought of clarifying the issues before the court. It would appear that frequently testimony was suggested and offered with the purpose of obscuring rather than clarifying.

The fact of the matter is, that Oak Cliff was a separate municipality, with a functioning municipal government with a separate post office, separate railroad connections and depot, and mail facilities from that railroad, as well as another railroad which ran from the city of Dallas through the city of Oak Cliff, and later on to Grand Prairie, Arlington, Handley and to Fort Worth. That railroad subsequently became an electric interurban. A regular bus service from Dallas to Oak Cliff and on west, now exists.

This separate municipality of Oak Cliff had its own paper, and from the very inception, had a business district. It was the seat of the famous Dallas Artillery. The armory was there. A splendid hotel, which later became a college, was there.

It was across the river from the municipality of Dallas. Later the two municipalities were connected by a long, concrete highway, and the city of Oak Cliff became a part of the city of Dallas, with the reservation that no intoxicants should be sold in the city of Oak Cliff.

It had, and has, its own churches, its own banks, its own stores, its own schools, and, is, in truth and in fact, a city made up of residences and a business district, plus many neighborhood stores which are in different sections of the city of Oak Cliff.

So far as the court is aware, the city of Dallas also has a business district. It was originally independent of not only the city of Oak Cliff, but of the East Dallas municipality. It is still independent of the city of Highland Park, and the city of University Park. It has a residential district with neighborhood stores, in South Dallas, North

Dallas, East Dallas, and West Dallas. Dallas, like all other cities, is made up of a district hugged by a residential district. People live in the residences in Oak Cliff, but the residences in Oak Cliff and the residences in Dallas are not in the business district of either of the two cities.

Of the aggregate population of approximately 450,000 people in Dallas, 155,000 of them live in the city of Oak Cliff. The city of Oak Cliff, in its business district, has a paper, post office, banks, and all of the accustomed businesses, including places of amusement, that are found in other American cities. The testimony here shows that there is at least one business in the business section of Oak Cliff which is the supplier of stocks of merchandise for at least two portions of the present city of Dallas.

The zoological garden of the city of Dallas is located in Oak Cliff. Oak Cliff, as its name signifies, is built on higher ground than is the other portion of Dallas.

There is a deep feeling of sentimental solidity between the two portions of greater Dallas, but there is also that local loyalty which does not permit, nor can it be satisfied by, a discriminating mail service which gives that to the business portion of Dallas, and denies it to the business portion of Oak Cliff, because the Postmaster General's directive did not authorize such discrimination. It really authorized the same sort of service for the business districts as distinguished from residential districts.

The record has been filled with suggestions of economy. The desirability of that move by the national government is felt by every American citizen, and every American citizen, I feel sure, is of the opinion that such a move and such an effort is vitally important. That can be effected in an easy way, without depriving the citizen of his right of mail delivery, when he pays the postage, namely, by denying gratuitous service to the millions of federal employees, both in Congressional circles, Judicial circles, and Executive circles. But this is not the business of the court. It is for the Congress. The economy here may be satisfied by equalizing mail deliveries in the two business districts. It may lessen the deliveries in the Dallas business district,

that will eradicate discrimination. The one delivery in residential districts has already reduced cost.

Counsel argue that mail is delivered because it would overflow the post office if not delivered. That a postmaster is to determine whether a citizen's mail is of *such importance* as to merit the service he shall receive. I thought the lowly and the exalted were and are entitled to the same treatment, under the law. The law is no respecter of persons.

A letter telling of the illness, or, death, of a loved one, might not be classed as business. Nor would a love letter receive such a preferred classing. But who is authorized to pass upon one's mail and give favorite treatment to commercial communications? The statutes protect the citizens' mail from opening, or, secreting, or, hiding, or, delaying. Those statutes apply to postal officials as well as to all others. It is the mail that is sacred. It belongs to the people. There is no superior nor favored, class.

An injunction will issue requiring no discrimination between the Oak Cliff business section and the Dallas business section, which will give Oak Cliff in its business district the number of deliveries it had before the order changing it to one delivery.