EDWARDS MFG. CO. v. NATIONAL FIREWORKS DISTRIBUTING CO.

NATIONAL FIREWORKS DISTRIBUTING CO. v. EDWARDS MFG. CO.

(Circuit Court of Appeals, Sixth Circuit.   April 14, 1921.)

Nos. 3445, 3446.

1. **Patents ⬅⟶328—926,308, claim 6, for toy pistol, held valid.**
   Claim 6, of the Wertz patent, No. 926,308, for a toy pistol, *held* valid.

2. **Patents ⬅⟶168(2)—Amendment to meet Patent Office's view as to proper designation of parts held not an estoppel limitation.**
   Where a claim for a toy pistol was amended to provide for a spring on the hammer, instead of the trigger, to meet the Patent Office's views as to the proper designation of the different parts of a pistol, the amendment involved no surrender of the claim as first stated, and could not be construed as an estoppel limitation, either in intent or effect.

3. **Patents ⬅⟶178—Not to be denied equivalents, differing only in form and arrangement, though art crowded.**
   Though an invention relating to toy pistols is in a crowded art, and cannot be given a broad range of equivalents, it should not be given such narrow construction as to exclude from its protection equivalents functioning in exactly the same manner, producing the same result, and differing only in form and arrangement.

4. **Patents ⬅⟶174—Claim not narrowly construed, to extent that it introduced new element into the art.**
   A claim for a toy pistol, to the extent that it introduced a feeding spring, which was a new element in the art, should not be narrowly construed.

5. **Patents ⬅⟶234—Not infringed by device of different construction, different mode of operation, and different result.**
   A patent for a toy pistol is not infringed by a device disclosing a different plan of construction, a different mode of operation, and a different specific result.

6. **Patents ⬅⟶328—926,308, claim 6, for toy pistol, held infringed.**
   Claim 6 of the Wertz patent, No. 926,308, for a toy pistol, *held* infringed, though a rigid pawl, held in place by a spring engaging with the trigger, was used to operate the feeding element, instead of a spring alone, engaging on the hammer.

7. **Patents ⬅⟶328—991,956, for toy pistol, held not infringed, if valid.**
   The Clark patent, No. 991,956, for a toy pistol, *held* not infringed, if valid, in view of the prior art.

---

⬅⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Cross-Appeals from the District Court of the United States for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Suit by the National Fireworks Distributing Company against the Edwards Manufacturing Company. From a decree for plaintiff for insufficient relief, both parties appeal. Affirmed.

Nathan Heard, of Boston, Mass. (Allen & Allen, of Cincinnati, Ohio, on the brief), for plaintiff.

Wm. R. Wood, of Cincinnati, Ohio (Wm. R. Wood, of Cincinnati, Ohio, on the brief), for defendant.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The bill of complaint filed in the District Court of the United States for the Southern District of Ohio, Western Division, charges infringement by the Edwards Manufacturing Company of claim 6 of the Wertz Patent, No. 926,308, June 29, 1909, and of the single claim of the Clark patent, No. 991,956, May 9, 1911. Both patents relate to toy pistol construction. The District Court entered a decree finding claim 6 of the Wertz patent valid and infringed; that the claim of the Clark patent was not infringed by the defendant's construction, and for that reason did not pass upon the validity of that patent. The defendant appealed from that portion of the decree finding claim 6 of the Wertz patent valid and infringed, and the plaintiff filed a cross-appeal from that portion of the decree finding that defendant's construction did not infringe the Clark patent.

Claim 6 of the Wertz patent reads as follows:

"6. A toy pistol, comprising a magazine adapted to receive an explosive tape therein, a spring for guiding the tape, a trigger, a hammer on the trigger, and a spring on the hammer adapted to engage the tape, for feeding it in the path of the hammer, as the hammer is actuated preparatory to striking the tape."

It is not seriously contended by the defendant that this claim of the Wertz patent is invalid. On the contrary, it is claimed that, in view of the prior art and the Patent Office proceedings preliminary to its issue, it is not entitled to the liberal construction of a generic invention, dominating the broad combination of a guide spring with any means for feeding the ammunition tape, so as to include within the range of equivalents defendant's wholly different construction.

[1] The case of Crescent Specialty Co. v. National Fireworks Distributing Co., 219 Fed. 130, 135 C. C. A. 28, involved the validity of claim 6 of the Wertz patent, and the validity of the single claim of the Clark patent. That case, however, was an appeal from an order of the District Court granting a preliminary injunction against the infringement of these patents, and necessarily this court confined its investigations to a determination of the question whether the District Court in granting the preliminary injunction had "exercised its discretion upon a wholly erroneous conception of pertinent facts or law," and therefore did not finally determine the validity of either patent;

but upon a full consideration of the evidence in this case, this court now adopts, without repeating, what was said by it in the opinion in that case in reference to the validity of claim 6 of the Wertz patent.

[2] It appears from the file wrapper of the Wertz patent that the Patent Office, in rejecting some of the original claims, required a revision as to terms as follows:

"In the nomenclature of the art, the part which strikes the cap, cartridge, or firing pin is known as the hammer; that which is manipulated by the finger, to discharge the gun or pistol, as the trigger; the spring which actuates the hammer as the mainspring; and the part 6, on which the cap of fulminate is exploded, as the anvil."

The applicant, in pursuance of this suggestion, amended claim 6 in conformity therewith, designating the part to which the feed spring was attached as the hammer, instead of the trigger. Appellant's construction has the separate trigger and hammer, and, in order to make this a vital distinction, it now contends that this amendment of the Wertz claim constituted an estoppel limitation, both in intent and effect, and that irrespective of intent or effect of this amendment, in view of the prior art, the claim cannot be lawfully extended to embrace defendant's device, which discloses a different principle of construction, mode of operation, and specific result.

In the form shown by Wertz the trigger and hammer are one piece, pivotally operating upon a fulcrum. The feed spring was inserted in a recess in the part above the fulcrum, which part of the single piece hammer and trigger the Patent Office insisted should be designated as the hammer, notwithstanding it was integral with the part below the fulcrum, which the Patent Office required to be designated as the trigger. To meet this requirement, the applicant substituted the words "spring on the hammer" for the words "spring on the trigger." It is apparent, therefore, that this amendment of claim 6 did not involve any surrender whatever of the claim as first stated, but rather a mere change in the terms used to designate parts of the construction to conform to the nomenclature of the art, and therefore cannot be construed as an estoppel limitation either in intent or effect. National Tube Co. v. Mark, 216 Fed. 507, 522, 133 C. C. A. 13; Frey v. Marvel Co., 236 Fed. 916, 921, 922, 150 C. C. A. 178.

[3] While undoubtedly the plaintiff's invention is in a crowded art, and for that reason claim 6 cannot be given a broad range of equivalents, yet certainly there is no reason for giving it such a narrow construction as to exclude from its protection equivalents functioning in exactly the same manner, producing the same result, and differing only in form and arrangement.

It appears from the evidence of plaintiff's expert that the feature which differentiates the improvement covered by claim 6 of the Wertz patent from the prior art centers about the tape-holding and tape-feeding springs, which co-operate to control the tape and effect a uniform, regular feeding movement, and which also co-operate to prevent backfire. It is unnecessary to review the prior patent art further than to say that these two elements co-operating to produce these results are not found therein.

[4] These elements constitute the main feature of the invention. It is not merely a new arrangement of old parts, but introduces at least one new element, the feeding spring, into toy pistol construction, and to that extent, at least, this claim should not be narrowly construed.

[5] If, however, as contended by counsel for appellant, defendant's device discloses a different plan of construction, a different mode of operation, and a different specific result, then it is not the equivalent of plaintiff's patent, and does not constitute infringement.

[6] In the defendant's construction a rigid pawl, instead of a flat spring, as in Wertz, is used for feeding the tape on the anvil. One end of this pawl engages the trigger extension, and the other end comes in loose contact with the tape-holding spring in the inside upper portion of the pistol casing. This pawl is held in place by engagement with one end of a spring coiled on the casing fulcrum of the trigger member. By reason of this spring attachment this pawl, in performing its function of feeding the tape on the anvil, presses yieldingly against the ammunition tape, as does the flat tape feeding spring in the Wertz patent. It also co-operates with the guide spring to prevent backfire. The fact that in defendant's construction a part of the feeding element is a rigid pawl engaging with a spring that permits it to press yieldingly against the tape does not distinguish it from this element of the Wertz patent, in which a yielding spring constitutes the entire element. The principle is the same; it is actuated by the same finger pressure upon the trigger, functions in the same manner, and produces the same result.

Nor is it important that this coil spring and pawl which constitute the feeding element in the defendant's construction, and which correspond to the flat spring which constitutes the feeding element in the Wertz patent, engages with the trigger, instead of the hammer. In order to produce the desired result, this feeding element in either construction must engage with one or the other of the moving parts, which in turn communicates motion to it. In the Wertz patent the only moving part is the one-piece trigger and hammer rotating on a pivot or fulcrum, the ends moving in opposite directions when the force of the operator's finger is applied to the trigger end, and reversing this movement when that force is removed and the mainspring permitted to function.

In Clark and in defendant's construction the trigger and hammer are separate parts, but, as suggested by the Patent Office, "whether formed together or separately, the purpose and function of the hammer and trigger remain the same." It is therefore obviously a mere matter of choice of arrangement as to which of these two moving parts shall be selected to communicate motion to the tape-feeding device. It would be idle to say that the fundamental function of this tape-feeding device is changed or altered in any respect by reason of the fact that in one arrangement it is attached to the hammer and in the other it is attached to the trigger. In the last analysis the real question is whether one device is the equivalent of the other.

[7] The claim of the Clark patent reads literally upon claim 6 of the Wertz patent, except that the Clark claim in addition thereto also

calls for the detail of the escapement mechanism functioning to control the two-part trigger and hammer operation. Both the one and the two piece hammer and trigger are old in the art. Plaintiff's expert testified that the use of one or the other is merely a matter of choice. We are cited to at least 11 different patents in which the trigger and hammer are of the two-piece construction, so that whatever of novelty, if any, there is in the Clark patent, must reside in the escapement mechanism of these elements. In Adams, No. 350,087, when the lower part of the trigger is pulled rearwardly, the upper end will engage with a lateral projection on the hammer in such manner as to slide the hammer away from the anvil and compress the mainspring. When the trigger reaches the limit of its rearward movement, the upper end slips under the projection on the hammer and permits the hammer to be thrown forcibly against the anvil. The lower end of the projection on the hammer is beveled from the front to the rear. On the upper end of the trigger is a reverse bevel. Upon the return movement of the trigger, which is accomplished by finger pressure, instead of a spring, the beveled end of the trigger is brought into engagement with the corresponding bevel portion of the projection on the hammer, permitting the trigger to be brought back into operative engagement with this projection.

Clark differs from Adams, in that he uses but one bevel, which is located on the shoulder of the hammer. The upper end of the trigger comes in contact with this shoulder, so that, when the lower end of the trigger is pulled rearwardly, the upper end moves the hammer forward until the trigger passes under it, and the hammer is thrown against the anvil by the action of the mainspring. The trigger is also provided with a spring coiled about its pivot, which spring, when the trigger end is released, will cause the trigger to move backward, the inner side of the upper end sliding over the bevel side of the hammer shoulder to its original position before firing. To compensate for the absence of the second bevel in Adams, the trigger in Clark is loosely connected upon its axis.

Whether the loose connection of this trigger as a substitute for the second bevel in Adams is such an advance over the prior art as to amount to invention, it is not necessary at this time to decide, for the reason that the defendant's construction differs from both Clark and Adams, in that the projection on the lower end of the hammer member engages with the shoulder on the lower end of the trigger member. When the trigger is pulled rearwardly, the engaging end of the hammer moves backward with the trigger until it passes the shoulder, and is then raised by a bevel on the trigger directly back of this shoulder to the plane of the outer surface of the shoulder itself. This permits the escape of the hammer member, which is then thrown by the action of the mainspring forcibly against the anvil.

The sole function of the bevel on the trigger to the rear of the shoulder is to permit the escape of the hammer member to the plane of the outer surface of the shoulder itself. Unlike the bevels in Clark and Adams, it performs no duty whatever in the return of the trigger to operative engagement. On the contrary, the lower end of the ham-

mer member does not come in contact with this bevel, but, having been raised by it to the plane of the outer surface of the shoulder on the trigger, passes directly over that surface into its original position behind the shoulder and in contact with it. While the lower end of the hammer member that connects with the shoulder on the trigger is rounded to some extent, in order to present as little area of contact as possible, and thus avoid friction, yet, this end of the hammer having been raised to the level of the plane of the outer surface of the shoulder on the trigger, no bevel on the hammer member is necessary to permit its return, and the point of contact is the highest point of this rounded end. Even if this end of the hammer that engages with the trigger were beveled, to facilitate its return over the beveled part of the trigger to the rear of the shoulder, then we would have the double bevel of Adams, instead of the single bevel and loose connection of Clark.

For the reasons above stated, the judgment of the District Court, finding claim 6 of the Wertz patent valid and infringed, and further finding that defendant's construction does not infringe the Clark patent, is affirmed.